## Burk v. Commonwealth et al.

February 1, 1949.

Nat Ryan Hughes and Fisher & Reed for appellant.

Waylon Rayburn and Wells Overbey for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This suit was instituted by appellees against appellant, Sallie Burk, to have her adjudged insane and incapable of managing her property. Although the suit was brought in the name of the Commonwealth, it was on relation of a nephew and two nieces of appellant who

would normally be among her heirs at law. Clearly discernible in the background is the fact that this is a fight between two sets of heirs for the control of appellant's property which, according to the record, has a value of about $30,000. Upon a trial of the case, the jury found appellant incompetent to manage her estate and recommended that a committee be appointed for that purpose. This appeal is prosecuted from a judgment based on that verdict.

### Grounds Relied on for Reversal.

Reversal is sought on these grounds: (1) The verdict is not sustained by the evidence; (2) the court erred in refusing peremptory instructions for appellant; (3) the court erred in admitting incompetent evidence on behalf of appellees; (4) misconduct of counsel for appellees in final argument to the jury. The first two of these grounds are so interrelated they will be considered together.

### Factual Background.

Sallie Burk is a maiden lady, the last survivor of seven brothers and sisters. Some of the testimony places her age at seventy-five although she testified that her age at the time of the trial was sixty-eight. Her property consists, or did consist, of a farm of about 68 acres located in Calloway County about six miles from Murray, Ky., and two houses in the town of Murray both of which are located on the same lot, No. 115 in the town of Murray. All this property came to her through her deceased brothers and sisters, either by inheritance, by will or by deed. The farm referred to above was conveyed by Sallie Burk to Carlene Burk, wife of Hosea Burk, a nephew of Sallie Burk, by deed dated August 30, 1940, in which deed Sallie Burk retained a life interest in herself. The recited consideration is $1 cash in hand paid. Title to lot No. 115, on which the two town houses are located, was in the name of Sallie Burk and Wade Burk, her last surviving brother, and had been conveyed to them, in survivorship, by their sister Annie Downs in 1938.

By deed dated March 25, 1947, shortly before the death of Wade Burk, Sallie Burk and Wade Burk, the latter joined by his wife, Sally Wade Burk, conveyed this

town property to Sally Wade Burk, wife of Wade Burk, and Hosea Burk and Ovida Burk Suggs, son and daughter of Wade Burk and Sally Wade Burk and nephew and niece of appellant, Sallie Burk. The recited consideration in this deed is love and affection. In this deed a life estate is reserved in Wade Burk and Sallie Burk as long as either of them shall live. Wade Burk has since died leaving the life estate in this property in Sallie Burk. So that the only property which Sallie Burk now owns, according to the record, is the life estate in the properties above referred to. She lives alone in one of the houses but rents rooms in that house to others. The other house is rented out. From her rents she receives an income of $105 per month which she uses to live on and for the necessary upkeep of her property.

## The Evidence.

As is usual in such cases, the testimony as to the mental condition of appellant and her competence to manage and control her property is quite conflicting. The lay witnesses, some five or six in number, who had come in contact with appellant and had had dealings with her in recent years, testified in substance that while she is able to attend to her ordinary duties about her house, they were of the opinion that she is not competent to handle and manage her property. They based this largely on her age and lack of experience in such matters. These witnesses included a banker, an insurance man, a niece and a man who lived in the same house with appellant as a roomer. Three doctors testified on behalf of appellees and against appellant. Dr. Houston, who had known appellant four or five years and had treated her professionally several times as her family physician, testified that her removed memory, that is of things in the past, is as good as it should be for one of her age, but that her present memory is not so good as indicated by the fact that she did not have any idea as to who is the President or Governor or Mayor; that in his opinion she is 75 years old, that she can get around home and attend to her household affairs as normally as anyone of her age, but that in his opinion she would not know how to handle business matters; that she would not know the significance of legal documents, and that if she were around a person who made things pleasant for her, she would give him any-

thing she had; that as far as legal papers and property matters are concerned, he thinks she is not sane and that she should have a committee to take care of her business affairs. Dr. J. L. Hopson, who is associated with Dr. Houston in the latter's clinic and who was present with Dr. Houston when he examined appellant, gave testimony which was in substance the same as that of Dr. Houston. Dr. Outland, County Health Officer, who had known appellant about thirty or thirty-five years, testified in substance the same as the other two doctors, to-wit, that she is about 75 years old, that her mind is all right as to her housekeeping and duties about home but that she has little or no mind about her business matters and that in his opinion she is not competent to handle her business or to know the extent and value of her estate.

In direct contradiction to the above testimony was that produced on behalf of appellant which included, in addition to her own testimony, that of six or seven lay witnesses who had known and had had an opportunity to observe appellant for a number of years. These included a nurse and a laboratory technician, both of whom live at the Murray Hospital, Rev. J. E. Skinner, appellant's pastor, Lester Nanny, County Clerk, who prepared the deed by which she conveyed the town property to her nephew and before whom she acknowledged same, an insurance man, a neighbor, and the sister-in-law and niece of appellant to whom she deeded an interest in her town property. The testimony of all these witnesses is to the effect that appellant is fully sane, normal for her age and is capable of managing her business affairs and handling her property. The medical testimony introduced on appellant's behalf was equally contradictory as was the lay testimony. Dr. Butterworth, who examined appellant during this litigation but had not previously known her, testified that in his opinion she is of sound mind and would be as capable of managing her property as would any other average woman of her age and that in his opinion it is not necessary that a committee for that purpose be appointed for her. In his examination of her he did not ask her anything about her property matters. Dr. Ora Mason, who had known appellant for 30 years, testified that from her observation and examination of appellant, she is of the opinion

that she is a person of sound mind and is capable of looking after and managing her own property and is as alert as the average woman of her age. Admitted on cross-examination that she did not question appellant about her property matters during the examination. In her own testimony on the witness stand, appellant Sallie Burk talked with normal-intelligence about her past life and present activities although she was confused as to her age, testifying at first that she was 61 or 62, then 63, and after having her recollection refreshed by her attorney, that she was 68 at the time. She later said she was two years older than her brother who, she said, was 71. There was also some confusion in her testimony about the farm property which she said she had not deeded away and still owned the whole of it, although other testimony shows this to have been deeded to the wife of her nephew, she retaining a life estate. On the whole her testimony was that of a reasonably normal person of her age.

With this conflicting testimony it is obvious that the question is one for the jury. Reading all the testimony we think the testimony of the lay witnesses rather preponderates in favor of appellant and the expert or medical testimony preponderates in favor of appellees. It is not for this court to weigh and evaluate the testimony or to reverse the case because we, sitting as a jury, might have reached a different conclusion. We cannot say that the verdict of the jury was not sustained by the evidence. Nor do we think the court erred in refusing peremptory instructions for appellant in view of the conflict in the testimony.

### Incompetent Evidence.

In the course of the trial a great many objections were offered by appellant's attorneys to particular questions asked and answers given. These objections were based largely on the idea that the sole question involved in the case was whether or not appellant was a person of sound mind and that questions relating to many phases of her property and her disposition of it and her dealings with her nephew Hosie Burk were not germane to the issue. We think the real question involved in this case is whether appellant is competent to handle her property. Pertinent to that inquiry is the way she

has been handling it and the actions and conduct of her nephew Hosie Burk with reference thereto. Hosie Burk is not on trial but his acts and her acts with reference to her property are so interwoven and interrelated that the testimony complained of was competent, we think, as showing her ability to protect her property interests. As in nearly all trials, some incompetent evidence was admitted in this one but after a careful examination of all the evidence objected to, we are of the opinion that no evidence prejudicial to the substantial rights of appellant, or such as would justify a reversal, was admitted.

### Misconduct of Counsel.

From the excerpts taken from the closing argument of counsel, as set out in the bill of exceptions, it appears that in one or two instances he went outside the record and based his argument on some testimony that had been offered but excluded. We do not condone this practice but have often said that in their closing arguments attorneys are allowed wide latitude in such arguments. It is not always easy to draw the line but the experienced judge who tried this case heard the arguments and overruled objections thereto given at the time. From the excerpts before us in the record, we cannot say that the court committed a reversible error in refusing to discharge the jury for misconduct of counsel in his closing argument.

Judgment affirmed.